IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC., | ) ) ) | No. CV-F-05-0377 REC LJO |
| Plaintiff, | ) ) ) | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION |
| vs. | ) ) | TO DISMISS. |
| ZENITH ADMINISTRATORS, INC., INTERPLAN CORPORATION, and DOES 1-25, inclusive, | ) ) ) ) | (Docs. 12, 13) |
| Defendants. | ) ) ) ) | |

On June 6, 2005, the Court heard Defendants' motions to dismiss Plaintiff's Complaint and Plaintiff's motion to remand the case to state court.  Upon due consideration of the written and oral arguments of the parties and the record herein, the Court GRANTS Plaintiff's motion to remand and denies Defendants' motions to dismiss on the grounds that the Court lacks subject matter jurisdiction.

**I.  Background**

On February 5, 2005, Doctors Medical Center of Modesto ("Plaintiff") filed its complaint in Stanislaus County Superior

1

1  Court.   The Complaint named as Defendants Zenith Administrators,
2  Inc., Interplan, Corporation, and Does 1-25.

3      Plaintiff is a hospital located in Modesto, California.
4  Compl. ¶ 1.  Interplan is a company that contracts with medical
5  care providers such as hospitals and physicians to obtain
6  discounted rates.  Compl. ¶ 2.  These groups of health care
7  providers are known as Preferred Provider Networks.  Interplan
8  then contracts with third parties such as employers, insurance
9  carriers and health care service plans to provide their
10 healthcare beneficiaries access to the negotiated discounted
11 rates.  Id.  Plaintiff alleges that Zenith has a health benefit
12 plan.  Compl. ¶ 3.  This health benefit plan is apparently
13 governed by the provisions of the Employee Retirement Income
14 Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*.

15     Plaintiff alleges that "through the efforts of Interplan"
16 Plaintiff and Zenith have entered into a written agreement that
17 provides for discounted rates for Zenith beneficiaries (the
18 "Agreement").  Compl. ¶ 4.  The Agreement was signed by Interplan
19 on behalf of Zenith and requires Zenith to pay for health care
20 goods and services rendered by Plaintiff.  Compl. ¶ 6.

21     In October of 2002, Plaintiff provided health care services
22 to a Zenith beneficiary ("Patient").  Plaintiff alleges that
23 Zenith was obligated to pay a for goods and services pursuant to
24 the terms of the Agreement and that Zenith failed to pay the full
25 amounts due to Plaintiff under the terms of the Agreement.
26 Compl. ¶¶ 5-7.

1   The complaint contains two state law causes of action.  The
2   first is for breach of contract against Zenith.  Plaintiff
3   alleges that Zenith was obligated by the Hospital-Interplan
4   Agreement to make payments to Plaintiff in accordance with the
5   Agreement and that Zenith breached this contract when it failed
6   to make such payments.  Compl. ¶¶ 9-4.  The second is for
7   tortious interference with contract against Interplan.  Plaintiff
8   alleges that Interplan arranged for the Agreement and that
9   Interplan intentionally repriced claims and caused Zenith to
10  breach its agreement with Plaintiff.  Compl. ¶¶ 15-22.

11  On March 17, 2005, Plaintiff filed in state court an
12  "Amendment to Complaint (Fictitious/Incorrect Name) and Proposed
13  Order" which sought to substitute Northern California Bakery
14  Drivers Security Fund (the "Fund") for a Doe Defendant.  On March
15  24, 2005, the Stanislaus Superior Court approved the amendment.

16  On March 18, 2005, however, Defendants Zenith and Interplan
17  removed the case to federal court, claiming that Plaintiff's
18  state law claims are completely preempted by ERISA.  Plaintiff
19  has moved to remand the case to state court and has requested
20  attorneys' fees.  Zenith filed a motion to dismiss for failure to
21  state a claim in which Interplan has joined, and the Fund has
22  filed a motion to dismiss or, in the alternative, for a more
23  definite statement as well as a motion to strike.  Interplan has
24  also joined in Zenith's opposition to the remand, however,
25  Interplan has made no arguments directly related to Plaintiff's
26  claim against it.

1   **II.   Plaintiff's Motion to Remand**

2       **A.   Legal Standard**

3       Federal courts are courts of limited jurisdiction.  A case

4   may be removed to federal court if the district court has

5   original jurisdiction based on diversity or a federal question.

6   28 U.S.C. § 1441(a).  "Questions of jurisdiction and removal are

7   generally determined from the face of a 'well-pleaded'

8   complaint."  Geweke Ford v. St. Joseph's Omni Preferred Care,

9   Inc., 130 F.3d 1355, 1357 (9th Cir. 1997) (citing Franchise Tax

10  Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-12,

11  103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)).  The well-pleaded

12  complaint rule looks to the allegations in the complaint and

13  ignores potential defenses.  Franchise Tax Bd., 463 U.S. at 10.

14  Ordinarily, preemption is a federal defense that will not

15  authorize removal to federal court.  Metropolitan Life Ins. Co.

16  v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55

17  (1987).

18      "An independent corollary to the well-pleaded complaint rule

19  is the 'complete preemption' doctrine."  Geweke Ford, 130 F.3d at

20  1358.  Congress may, by law, completely preempt a particular area

21  such that "any civil complaint raising this select group of

22  claims is necessarily federal in character."  Metropolitan Life,

23  481 U.S. at 63-64.  ERISA is one such law.  Id. at 64; Geweke

24  Ford, 130 F.3d at 1358.

25      The Ninth Circuit has articulated a two-part test to

26  determine whether a state law claim is completely preempted by

4

1  ERISA and may be removed to federal court.  In order to

2  demonstrate complete preemption, Defendants must show that the

3  state law claim (1) is expressly preempted by ERISA *and* (2) falls

4  within the scope of ERISA's civil enforcement scheme.  <u>Providence</u>

5  <u>Health Plan v. McDowell</u>, 385 F.3d 1168, 1171, *rehearing denied*,

6  *rehearing en banc denied*, 385 F.3d 1168 (9th Cir. 2004) (citing

7  <u>Metropolitan Life</u>, 481 U.S. at 62-66; <u>Toumajian v. Frailey</u>, 135

8  F.3d 648, 654 (9th Cir. 1998)) (emphasis added).  In <u>Aetna</u>

9  <u>Healthcare Inc. v. Davila</u>, 542 U.S. 200, ____, 124 S. Ct. 2488,

10  2498 n.4, 159 L. Ed. 2d 312 (2004), however, the Supreme Court

11  rejected the respondent's argument that ERISA's civil enforcement

12  scheme, section 502(a), completely preempts only if the state

13  cause of action would be expressly preempted under ERISA section

14  514(a).  It thus appears that Defendants may demonstrate complete

15  preemption if the state law claim (1) is expressly preempted by

16  ERISA *or* (2) falls within the scope of ERISA's civil enforcement

17  scheme.

18      Defendants have the burden of establishing that the Court

19  has subject matter jurisdiction and that removal was proper.

20  <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).  In

21  demonstrating complete preemption by ERISA, Defendants must

22  overcome a presumption against preemption.  <u>New York State</u>

23  <u>Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.</u>, 514

24  U.S. 645, 655, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995)

25  (hereinafter <u>Travelers</u>).

26  ///

5

**B.   The Fund is Not a Party to This Action**

Plaintiff's complaint, filed in state court, named only Zenith and Interplan as Defendants and included 25 defendants sued fictitiously.  Prior to this action being removed, Plaintiff filed a request for leave to amend the complaint to add the Fund as a defendant.  The amendment was not approved until after this case was removed, and no amended complaint has been submitted.

"In determining the existence of removal jurisdiction based upon a federal question, we must look to the complaint as of the time the removal petition was filed."   <u>Libhart v. Santa Monica Dairy Co.</u>, 592 F.2d 1062, 1065 (9th Cir. 1979) (citing <u>Great N.Ry. v. Alexander</u>, 246 U.S. 276 (1918)); <u>see also</u> <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534, 537, 59 S. Ct. 347, 83 L. Ed. 334 (1939) (stating motion to remand is "determined according to the plaintiffs' pleading at the time of the petition for removal"). Further, the filing of a notice of removal with the relevant state court "shall effect the removal and the State court shall proceed no further unless and until the case is remanded."  28 U.S.C. § 1446(d).

Here, the proposed amendment was not approved until after the case was removed, and thus at the time of removal, the Fund was not yet a party.  Moreover, Plaintiff has not, according to the record, filed an amended complaint in this Court that includes the Fund as a party.  Accordingly, because it was not a party to the state court complaint and has not been joined to the action through proper procedure, the Fund is not a party to this

action.  The Court will not, therefore, consider further the filings submitted by the Fund.[1]

**C. Discussion**

### 1. Express Preemption by ERISA

ERISA contains an express preemption clause which states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," with exceptions not relevant here.  ERISA § 514(a), 29 U.S.C. § 1144(a).  The Supreme Court has devised a two part test for determining whether challenged state laws "relate to" an ERISA plan: "A law relates to a covered employee benefit plan for the purposes of § 514(a) if it [1] has a connection with or [2] reference to such a plan."  <u>Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.</u>, 187 F.3d 1045, 1052 (9th Cir. 1999) (quoting <u>California Div. of Labor Standards Enforcement v. Dillingham Constr.</u>, 519 U.S. 316, 324, 117 S. Ct. 832, 136 L. Ed. 2d. 791 (1997) (internal quotations omitted)).

"There are limits to the unusually broad preemptive sweep" of ERISA.  <u>Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)</u>, 125 F.3d 715, 723 (9th Cir. 1997).  Not every suit "affecting and involving ERISA plans" is preempted.  <u>Mackey</u>

---

[1]   The Fund's request for $2,992.00 in attorneys' fees is DENIED; the Fund argued that Plaintiff made "insincere communications" to it that caused the Fund to believe it was a party to this action, despite no service of a summons or complaint. The Fund also argues that it made an appearance because it did not want to face default, despite citing authority to Plaintiff that it is not a party.  The Fund cites no authority that an award of fees is proper in the case of a voluntary appearance by a non-party.

1   v. Lanier Collection Agency & Serv., 486 U.S. 825, 833, 108 S.

2   Ct. 2182, 100 l. Ed. 2d 836 (1988).  In addition to a civil

3   enforcement action under ERISA, "ERISA plans may be sued in a

4   second type of civil action as well.  These cases - lawsuits

5   against ERISA plans for run-of-the-mill state-law claims such as

6   unpaid rent, failure to pay creditors, or even torts committed by

7   an ERISA plan - are relatively commonplace."  Id. at 832-33.

8   There is no preemption "if the state law has only a tenuous,

9   remote, or peripheral connection with covered plans, as is the

10  case with many laws of general applicability."  Travelers, 514

11  U.S. at 651.

12      A law makes "reference to" an ERISA plan if it "acts

13  immediately and exclusively upon ERISA plans" or if the

14  "existence of ERISA plans is essential to the law's operation."

15  Dillingham, 519 U.S. at 325.  The Ninth Circuit has described the

16  "reference to" prong as "fairly precise."  Abraham v. Norcal

17  Waste Sys. Inc., 265 F.3d 811, 820-21 (9th Cir. 2001).

18      Here, Plaintiff's claims arise under state contract and tort

19  law.  These laws are generally applicable and cannot be said to

20  act "immediately and exclusively upon ERISA plans."  Nor can it

21  be said that the existence of ERISA plans is "essential" to their

22  operation.  See Arizona State Carpenters, 125 F.3d at 723-24

23  (finding no preemption where state law claims arose from state

24  law doctrines of general application and did not depend on

25  ERISA).

26

8

1    Determining whether a state law has a "connection with" an

2    ERISA plan is not so precise a test.  The Supreme Court has

3    stated that courts must look "both to the objectives of the ERISA

4    statute as a guide to the scope of the state law that Congress

5    understood would survive as well as to the nature of the effect

6    of the state law on ERISA plans."  Dillingham, 519 U.S. at 325.

7    The Court in Travelers further stated that "[t]he basic thrust of

8    the preemption clause [ ] was to avoid a multiplicity of

9    regulation in order to permit the nationally uniform

10   administration of employee benefit plans."  514 U.S. at 657.

11       In enacting ERISA, Congress aimed to:

12       ensure that plans and plan sponsors would be subject to
         a uniform body of benefits law; the goal was to
13       minimize the administrative and financial burden of
         complying with conflicting directives among States or
14       between States and the Federal Government . . . [and to
         prevent] the potential for conflict in substantive law
15       . . . requiring the tailoring of plans and employer
         conduct to the peculiarities of the law of each
16       jurisdiction.

17   Travelers, 514 U.S. at 658 (quoting Ingersoll-Rand v. McClendon,

18   498 U.S. 133, 142, 111 S. Ct. 478, 112 L. Ed. 2d. 474 (1990)).

19   In Blue Cross of California, the Ninth Circuit stated with

20   respect to this language that "because the Provider's claims

21   arise from contracts that a health care provider makes with its

22   medical providers, the difficulties that Congress sought to avoid

23   with ERISA's preemption clause are not implicated here."  187

24   F.3d at 1054.  The Court in Travelers also stated that:

25       In sum, cost uniformity was almost certainly not an
         object of pre-emption, just as laws with only an
26       indirect economic effect on the relative costs of

9

1   various health insurance packages in a given State are
    a far cry from those "conflicting directives" from
2   which Congress meant to insulate ERISA plans.  Such
    state laws leave plan administrators right where they
3   would be in any case, with the responsibility to choose
    the best overall coverage for the money.
4

5   514 U.S. at 662.

6       Moreover, "preemption of a third-party provider's

7   independent state law claims would discourage health care

8   providers from treating patients without first evaluating the

9   solvency of each patient or requiring patients to pay in advance

10  the cost of their medical services."  The Meadows v. Employers

11  Health Ins., 47 F.3d 1006, 1010 (9th Cir. 1995); Hoag Memorial

12  Hosp. v. Managed Care Administrators, 820 F. Supp. 1232, 1237

13  (C.D. Cal. 1993).  Such a result conflicts with Congress' goal of

14  protecting the interests of employees and beneficiaries.  Hoag,

15  820 F. Supp. at 1237.

16      The Ninth Circuit has used a variety of approaches in

17  determining whether a claim has a connection with an ERISA plan.

18  See Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d

19  1212, 1217-19 (9th Cir. 2000) (summarizing various Supreme Court

20  and Ninth Circuit tests).  The primary focus of these tests is

21  whether the law at issue "encroaches on relationships regulated

22  by ERISA, such as between plan and plan member, plan and

23  employer, and plan and trustee."  Blue Cross of California, 187

24  F.3d at 1053; see also Rutledge, 201 F.3d at 1219; Providence

25  Health Plan, 385 F.3d at 1172.  "ERISA does not preempt

26  regulation of those relationships where a plan operates just like

10

1   any other commercial entity - for instance the relationship

2   between the plan and its own employees, or the plan and its

3   insurers or creditors." <u>Geweke Ford</u>, 130 F.3d at 1358 (citing

4   <u>General Am. Life Ins. Co. v. Castonquay</u>, 984 F.2d 1518, 1522 (9th

5   Cir. 1993)).

6        In <u>Blue Cross of California</u>, 187 F.3d at 1051, the Ninth

7   Circuit found that the state law claims of a group of health care

8   providers were not preempted by ERISA.  The health care providers

9   had an agreement with Blue Cross that included a fee schedule for

10  services.  <u>Id.</u> at 1051.  The providers filed suit in state court

11  when Blue Cross unilaterally adjusted the fee schedule.  The

12  Ninth Circuit held that, as will be discussed <u>infra</u>, the case did

13  not involve construction of the terms in an ERISA plan because it

14  was the terms of the provider agreement that were in question.

15  The court also held that the state law claims were not

16  intertwined with the beneficiaries' ERISA benefits because there

17  was no claim that the beneficiaries had not received full

18  benefits under the plans or that the interpretation of the

19  provider agreement would alter the benefits to which

20  beneficiaries would be entitled.  <u>Id.</u> at 1053-54.

21       Given this background, Plaintiff's claims lack the necessary

22  "connection with" an ERISA plan to establish complete preemption.

23  The relationship between providers and ERISA plans or between

24  providers and the beneficiaries of ERISA plans is not one of the

25  relationships traditionally governed by ERISA.  As the court in

26  <u>Hoag</u> stated:

1    Congress struck a bargain in ERISA.  While employees
2    relinquished many state and federal law rights, they
     gained many important protections under ERISA.
3    However, third-party health care providers were never
     invited to partake in this compact.  They should not be
4    denied the right to seek a remedy to redress their
     wrong.

5  820 F. Supp. at 1238 (discussing Memorial Hospital System v.

6  Northbrook Life Ins. Co., 904 F.2d 236, 249 (5th Cir. 1990)).

7        Plaintiff's state law claims do not impose "conflicting

8  directives" or require the "tailoring of plans;" they deal with

9  the cost of health care as delineated by the Agreement, an

10 independent contract.  ERISA was not intended to create cost

11 uniformity or a national fee schedule.  Plaintiff's claims do not

12 impact the administration of an ERISA plan.  As alleged in the

13 complaint, the only issue raised by Plaintiff is the failure to

14 pay the claims.  There is no allegation that benefits were

15 wrongly denied.  As stated more clearly in Plaintiff's amended

16 motion to remand, "Hospital is not asserting or claiming the

17 Patient is entitled to benefits."  Pl.'s Amended Mot. at 8.

18       Zenith's argument in response is largely based on facts

19 outside the pleadings.  Zenith argues that the Fund is the party

20 responsible for payment and that it, Zenith, only administers

21 benefits.  The question on remand is whether the complaint at the

22 time of removal stated a claim.  The Complaint alleges that

23 Zenith is required to make payments and that Zenith failed to do

24 so.  Compl. ¶¶ 10-12.  That Zenith may eventually successfully

25 move for summary judgment based on the Fund being the party that

26 failed to pay is irrelevant to the issue of subject matter

1   jurisdiction.  Plaintiff's state law claims require only the
2   interpretation of the Agreement and the obligations of the
3   parties thereto.

4        As in <u>Blue Cross of California</u>, Plaintiff's claims are not
5   preempted because they do not depend on the construction of terms
6   in ERISA plans, but rather involve the construction and
7   interpretation of the Agreement.  Nor are Plaintiff's claims
8   intertwined with beneficiaries' ERISA benefits; again, Plaintiff
9   does not allege that benefits have been denied or that
10  beneficiaries have not received the full benefits due them.
11  Plaintiff's claims are confined to whether the amount paid to the
12  provider, Plaintiff, for those benefits was proper under the
13  Agreement.

14       This outcome is consistent with other cases in this circuit.
15  In <u>Hoag</u>, 820 F. Supp. at 1235, for example, the court found no
16  preemption in what was arguably a closer case.  A patient was
17  admitted to the plaintiff's facility based on assurances from the
18  defendant that there was insurance coverage.  <u>Id.</u> at 1233.  The
19  defendant subsequently denied coverage pursuant to an exclusion
20  in the policy regarding coverage for illegal acts.  <u>Id.</u>  The
21  provider sued in state court on contract and tort theories.  The
22  district court rejected the defendant's argument that the claim
23  would interfere with the administration of the plan because
24  plaintiff was a "third party health care provider suing to
25  recover an independent obligation of the Plan to pay for care and
26  treatment."  <u>Id.</u> at 1235.  The same is true in this case.

1    Accordingly, the connection between the ERISA plan and

2 Plaintiff's claims is too "tenuous, remote or peripheral" to find

3 complete preemption.  There is no federal subject matter

4 jurisdiction on this basis.

5           **2.  Preemption by ERISA's Civil Enforcement Scheme**

6    ERISA Section 502(a), 29 U.S.C. § 1132, is the civil

7 enforcement prong of ERISA.  Section 502(a) provides, in relevant

8 part, that:

9         A civil action may be brought-
          (1) by a participant or beneficiary-
10        (A) [omitted]
          (B) to recover benefits due to him under the terms of
11        his plan, to enforce his rights under the terms of the
          plan, or to clarify his rights to future benefits under
12        the terms of the plan; . . .

13 29 U.S.C. § 1132(a)(1)(B).  Thus an ERISA participant may sue

14 under this provision to either recover benefits or enforce or

15 clarify his rights.  State law claims that attempt to accomplish

16 these ends are completely preempted by ERISA, regardless of how

17 they are pleaded.  Davila, 124 S. Ct. at 2496; Metropolitan Life

18 Ins. Co., 481 U.S. at 66-67.

19    Under Davila,[2] a cause of action is "within the scope of

20 ERISA § 502(a)(1)(B)" "if an individual, at some point in time,

21

22        [2] The Court notes, however, that the facts in Davila are
   dissimilar to the instant case.  There, two participants in or
23 beneficiaries of ERISA plans attempted to sue under a Texas statute
   that imposed a duty of care in making health care decisions.
24 Davila, 124 S. Ct. at 2493.  The Court held that the respondents'
   claims were preempted in part because it was "clear, then, that
25 respondents complain only about denials of coverage promised under
   the terms of ERISA-regulated employee benefit plans."  Id.  at
26 2497.

could have brought his claim under ERISA § 502(a)(1)(B), and
where there is no other independent legal duty that is implicated
by a defendant's actions."  124 S. Ct. at 2496.  Whether
Plaintiff's claims are preempted thus depends on whether
Plaintiff could have brought its claims under ERISA.

Zenith argues that "where, as here, there is no independent
contractual basis for an ERISA claim, but the hospital has
accepted an assignment of benefits, courts hold that the claim is
completely preempted."  Zenith's Opp'n at 8.  As the cases cited
by Zenith demonstrate, this statement is inaccurate.

In Misic v. Building Service Employees Health & Welfare
Trust, 789 F.2d 1374 (9th Cir. 1986),[3] the Ninth Circuit held
that a physician who sued *derivatively*, as an assignee of
beneficiaries under an ERISA plan, had standing under ERISA to
assert the claims of his patient-assignors.  The plaintiff health
care provider in Misic had no independent contractual
relationship with the defendant plan, and thus could only sue the
plan as an assignee.

In contrast to Misic, the Ninth Circuit found no preemption
in Blue Cross of California, 187 F.3d at 1051, in which there was
an independent obligation between the health care provider and
the ERISA plan.  In Blue Cross of California, a group of health
care providers had an agreement with Blue Cross that included a

_____

[3]  Because the plaintiff in Misic conceded that his state law
claims were preempted by ERISA, the Ninth Circuit did not discuss
the preemption issue.  789 F.2d at 1379.

fee schedule for services.  Id. at 1051.  The providers filed

suit in state court when Blue Cross unilaterally altered the

fees.  The Ninth Circuit held that, unlike in Misic, the terms of

the provider agreement were at issue and not the patient's

benefits, so the providers were properly asserting a state law

breach of contract claim.  The court stated that the dispute was

"not over the right to payment, which might be said to depend on

the patients' assignments to the Providers, but the amount, or

level, of payment which depends on the terms of the provider

agreements."  Id. (emphasis original).

Here, Plaintiff is not seeking recovery as an assignee of

ERISA plan beneficiaries under the terms of an ERISA plan.  This

is true despite Zenith's attempts to construe Plaintiff's claim

as being one regarding benefit administration.  Plaintiff seeks

to enforce the terms of a separate and independent contract

regarding the fees due for services rendered; the complaint

alleges only the failure to pay according to the contract, not a

coverage dispute.  Moreover, as Plaintiff pointed out at oral

argument, that Plaintiff is not seeking recovery as an assignee

is illustrated by the fact that a plan beneficiary would not have

standing to seek relief under the Agreement because such persons

are not parties to the Agreement.

The cases cited by Zenith in which a plan participant

brought suit are inapposite.  They do not involve a third party

provider or a separate and independent contract, the critical

distinguishing factor.  This case, just like Blue Cross of

16

1   California, deals with benefits that were approved and provided

2   but that were allegedly not paid in full under the Agreement.

3   The breach of contract claim seeks only to enforce the terms of

4   the Agreement, which is governed by state law.

5         Zenith also cites an unpublished decision from the Northern

6   District of California, California Pacific Medical Center v.

7   Concentra Preferred Systems, Inc., No. 04-3083, 2004 WL 2331876

8   (N.D. Cal. Oct. 15, 2004), in which the court granted the

9   defendant's motion to dismiss based on ERISA preemption.  The

10  Court declines to follow this case not only because it is

11  unpublished and not binding, but also because the court did not

12  directly address the subject matter jurisdiction issue and did

13  not discuss or distinguish Blue Cross of California.   In

14  Concentra, the court looked only at the Rule 12(b)(6) issue and

15  applied a "but for standard" to determine preemption.  The

16  standard that was applied was from Dishmun v. UNUM Life Ins. Co.

17  of Am., 269 F.3d 974, 977 (9th Cir. 2001), a factually dissimilar

18  case involving a suit by an ERISA plan beneficiary rather than a

19  third party provider, which was the case in Blue Cross of

20  California.  The court also relied on Misic to find preemption

21  without distinguishing the principles and rule delineated in Blue

22  Cross of California, which, again, unlike Misic, involved a

23  separate contract regarding fees.  Blue Cross of California is,

24  of course, a binding decision.

25        In sum, because Plaintiff is seeking to recover amounts due

26  under a contract that is independent of the ERISA plan, it could

1  not, at any time, have brought an enforcement action under ERISA.

2  Plaintiff's claims are thus not within the scope of ERISA's civil

3  enforcement provision and are not completely preempted.  Because

4  the test in <u>Davila</u> is conjunctive, the failure on this prong

5  obviates the need to discuss the second prong.

6  **III.  Motions to Dismiss**

7     A court lacking jurisdiction is without power to rule on the

8  merits of a case; any such ruling is a legal nullity and has no

9  effect.  <u>Orff v. United States</u>, 358 F.3d 1137, 1149 (9th Cir.

10  2004).  The Court, as explained above, lacks jurisdiction to hear

11  Plaintiff's claims.  Accordingly, the Court will not address the

12  merits of Defendants' motions to dismiss.

13  **IV.  Fees**

14     Plaintiff's motion to remand seeks attorneys' fees and the

15  costs associated with the removal action.  Plaintiff argues that

16  it made Zenith aware of prior cases from this Court involving

17  similar facts in which motions to remand were granted.  Zenith

18  argues that an award of fees to Plaintiff is not warranted and

19  that it should be awarded fees because Plaintiff failed to

20  clarify the basis for its suit against Zenith.  Zenith objects to

21  Plaintiff's "recrafting and rewriting" of the Complaint in its

22  motion to remand.  Zenith also argues that, based on <u>Concentra</u>,

23  it reasonably believed it had a colorable claim for removal.

24     Section 1447 of the removal statute provides that "[a]n

25  order remanding the case may require payment of just costs and

26  any actual expenses, including attorney fees, incurred as a cost

of the removal."  28 U.S.C. § 1447.  An award of fees and costs
on remand is left to the discretion of the district court and
does not require a showing of bad faith.  <u>Moore v. Permanente</u>
<u>Medical Group</u>, 981 F.2d 443, 446 (9th Cir. 1992).

Here, Zenith presents no statutory basis for its suggestion
that fees may appropriately be awarded to the removing party, and
its request is DENIED.  Plaintiff's request is likewise DENIED
because Zenith's argument based on <u>Concentra</u>, though not
persuasive, was not wholly unreasonable.

**ACCORDINGLY, IT IS ORDERED** that Plaintiff's motion to remand
is hereby GRANTED.

**FURTHER ORDERED** that Defendants' motions to dismiss are
hereby DENIED on the grounds that the Court lacks subject matter
jurisdiction.

**FURTHER ORDERED** that all requests for fees and costs are
hereby DENIED.

IT IS SO ORDERED.

Ia40ij**Dated:  July 5, 2005**              **/s/ Robert E. Coyle**
                                            UNITED STATES DISTRICT JUDGE